UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DANIEL PELUSO,

                Plaintiff,

    -against-

CENTEREACH FIRE DISTRICT,
COMMISSIONER JULIA ANNE WILSON,
COMMISSIONER FRANK RUDILOSSO,
COMMISSIONER RAYMOND CATAPANO,
COMMISSIONER SCOTT JORDAN,
COMMISSIONER DOMINICK D'ONOFRIO,
individually and in their official capacity,

                Defendants.
-------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
15-CV-7247 (JMA) (SIL)

**APPEARANCES:**

Michael Vincent Devine
Law Office of Michael V. Devine
87 Cliff Road
Belle Terre, NY 11777
    *For Plaintiff*

Gregory Bertram Reilly
Martin Clearwater & Bell, LLP
220 East 42nd Street
New York, NY 10017

Maria Massucci
Siler & Ingber, LLP
301 Mineola Boulevard
Mineola, NY 11501
    *For Defendants*

**AZRACK, United States District Judge:**

      Daniel Peluso was fired from his job as the chief mechanic at the Centereach Fire District (the "District") after an audit revealed that he used his employer's tax-exempt status to buy personal car parts at discounted prices. Plaintiff's complaint accuses the District and five

1

commissioners, in their individual and official capacities, of violating his rights to procedural and substantive due process under the Fourteenth Amendment. Plaintiff also appears to raise a First Amendment retaliation claim. In addition, plaintiff has alleged various state law claims.

Defendants have moved for summary judgment on all of plaintiffs' claims. For the reasons that follow, the Court grants defendants summary judgment on plaintiff's federal claims and declines to exercise supplemental jurisdiction over plaintiff's state law claims.

## I. BACKGROUND

The parties agree on 83 out of 93 statements asserted in their Local Rule 56.1 Statements. Peluso qualifies eight others and denies two outright. (Pl.'s 56.1 Stmt. ¶¶ 1, 9, 19, 30, 62, 69, 87, 89, 91–92, ECF No. 24-11.) In light of this common ground, the Court sets out only facts necessary to resolve this motion. The Court construes the facts in the light most favorable to Peluso, the party opposing summary judgment, and all inferences and ambiguities are drawn in his favor. Capobianco v. City of New York, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

In or about the Spring of 2014, the District Manager, Rudy Sunderman, conducted an audit of the maintenance shop. (Defs.' 56.1 Stmt. ¶ 8, ECF No. 24-1.) The District is a governmental entity that receives tax-exempt status from the State of New York. As a result of this tax exemption, the District does not pay tax for parts and equipment that it purchases. This exemption does not, of course, extend to an employee's personal purchases. In addition to receiving the benefit of tax-exempt status, the District is also able to buy parts and equipment from vendors at a price that is discounted from the standard list price. (Appeal Decision at 4, ECF No. 24-17.)

For items under $500, Peluso, as the chief mechanic, had the authority to order parts and equipment without the approval of the Fire District Manager. (Id. at 5.)

2

While conducting the audit, Sunderman discovered invoices that Peluso used to buy parts for personal use for which no sales taxes were paid. (Defs.' 56.1 Stmt. ¶¶ 9, 14, 18.) Peluso made about twenty-seven such personal purchases between 2006 and 2014. (Defs.' Stmt. ¶¶ 14, 18; Stmt. of Charges at 2–5, ECF No. 24-13) (reproducing the charges in full). The name "Centereach Fire District" appears on each invoice. (Defs.' 56.1 Stmt. ¶ 10.) Although it appears undisputed that Peluso paid for all of these parts with his own money, the District asserts that he acted inappropriately by taking advantage of the District's tax-free status and the reduced rates that it paid for parts. (Id. ¶¶ 16–17, 26.)

Peluso asserts that he did not intend to evade sales taxes. (Peluso Aff. ¶ 5; ECF No. 25-13.) Peluso also argues that the District targeted him because his wife, a former District employee who was fired in May 2013, filed a discrimination claim against the District, which she ultimately settled. (Compl. ¶ 20–21.)

As a result of the audit, the District asserted three charges against Peluso: (1) violation of Section 1801(a)(7) of the Tax Law, (2) violation of Section 1801(a)(8) of the Tax Law, and (3) violation of the Centereach Fire District Code of Ethics. (Defs.' 56.1 Stmt. ¶ 13; see also Hr'g Tr. at 101 (explaining that the Fire District Code of Ethics prohibits employees from using their position to get a pecuniary benefit)). Peluso opted for a third-party hearing under the New York Civil Service Law, rather than pursuing the alternative option of an Article 78 petition under the New York Civil Practice Law and Rules. (Defs.' 56.1 Stmt. ¶ 20.) A disciplinary hearing was held on July 11, 2014 before a third-party hearing officer pursuant to Section 75 of the New York Civil Service Law. (Id. ¶ 20.) At the hearing, Peluso apparently asserted that he did not intend to evade taxes and offered letters from certain parts vendors stating that he never asked the vendors

3

to make his purchases tax exempt.[1]  (Aff. of Michael Devine Ex. C; Defs.' 56.1 Stmt. ¶ 30.)  On July 22, 2015, the hearing officer issued a Report and Recommendation, finding found Peluso guilty of violating Section 1801(a)(7) of the Tax Law and the District's Code of Ethics, and recommending his termination.  (Defs.' 56.1 Stmt. ¶¶ 20, 35.)  The Board voted to accept this recommendation and terminated plaintiffs' employment.  (Id. ¶ 37.)  Invoking his rights under the New York Civil Service Law, Peluso then appealed to the Suffolk County Personnel Officer, who sustained the decision.  (Id. ¶¶ 43–44.)  Peluso insisted that he was unaware that no sales tax was being charged and also argued that the district retaliated against him for his wife's discrimination complaint.  (Appeal Decision at 7.)  In a ten-page decision, the Suffolk County Personnel Officer upheld the termination, stating "the action of the Board was not unreasonable . . . [and] the penalty of termination is neither shocking to one's sense of fairness nor is it arbitrary"; and that plaintiff's "prolonged misuse of his position could have had serious repercussions on the Centereach Fire District had they been brought to light by someone other than a fire district employee."  (Id. ¶ 45.)  The Suffolk County Personnel Officer reasoned that an oversight might be a plausible explanation for one purchase, but not for twenty-seven purchases.  (Appeal Decision at 9–10.)  The Suffolk County Personnel Officer's decision also concluded that "'there is no evidence in the record to substantiate [plaintiff's] claim [of retaliation related to his wife's EEOC charge].'"  (Defs.' 56.1 Stmt. ¶ 46.)

## II. DISCUSSION

### A. Summary Judgment Principles

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] At his deposition, plaintiff stated that he did not take the hearing seriously, because he "didn't think [the charges were] going to hold weight."  (Defs.' 56.1 Stmt. ¶ 34.)

4

56(a). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). If the moving party has satisfied this initial burden, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)) (emphasis omitted). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

"When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

**B. Due Process Claims**

Peluso argues that defendants violated his procedural and substantive due process rights under the Fourteenth Amendment. (Pl.'s Br. at 14–18.) As explained below, however, summary judgment is warranted on these federal law claims.

**1. Procedural Due Process**

For a procedural due process claim, the Court must answer two questions: (1) whether Peluso "possessed a liberty or property interest" and (2) "what process he was due before he could be deprived of that interest." Ciambriello v. Cty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). With respect to the second inquiry, the "Supreme Court has held that a tenured public employee is entitled to a hearing prior to being terminated." Id. at 319.

5

As for the first step, the New York Civil Service Law "gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing." Id. at 314 (quoting O'Neill v. City of Auburn, 23 F.3d 685, 688 (2d Cir. 1994)). As for the second step, Peluso clearly received a pre-termination hearing.

At his deposition, plaintiff conceded that he does not challenge either (1) the format or process which the hearing officer employed in conducting the hearing or (2) the process by which the Suffolk County Personnel Officer affirmed the termination of plaintiffs' employment. (Defs.' 56.1 Stmt. ¶¶ 32–33, 47.) Rather, Peluso's entire procedural due process claim is premised on his contention that the District acted in excess of its jurisdiction because some of the actions for which he was disciplined dated back to 2006. (Pl.'s Br. at 17–18.) Generally, under the New York Civil Service Law, an employee can only be disciplined for conduct that occurred within one year of the commencement of the disciplinary hearing brought against the employee. De Guzman v. State of New York Civil Serv. Comm'n, 11 N.Y.S.3d 296 (App. Div. 3d Dep't 2015) (citing N.Y. Civil Service Law § 75(4)), leave to appeal denied, 26 N.Y.3d 913 (2015). The Civil Service Law contains an exception to this limitations period that applies where the "charges would, if proved in a court of appropriate jurisdiction, constitute a crime." Id. (quoting N.Y. Civil Service Law § 75(4)). Because a prosecution for a New York Tax Law violation must be filed within three years of the alleged violation, N.Y. C.P.L. § 30.10(3)(d), Peluso contends that the District acted in excess of its jurisdiction—and violated procedural due process—when it disciplined him for actions that occurred outside of the three-year statute of limitations.

This argument is utterly meritless. Plaintiff does not cite to any case in which a court has held or even suggested that procedural due process is violated when a public employer holds a pre-termination hearing, but disregards the statute of limitations (and, thus, acts outside of its statutory

6

jurisdiction) in terminating a public employee. In fact, plaintiff does not cite to a single case involving a procedural due process claim. The only case plaintiff cites is De Guzman, which was an Article 78 proceeding filed in state court. In De Guzman, the court found that the public employer exceeded its statutory authority by disciplining the employee based on charges that were time-barred under the Civil Service Law. Id. De Guzman was decided on state law grounds and says nothing about procedural due process under the Fourteenth Amendment. Because the proceedings at issue satisfied plaintiff's procedural due process rights under the Fourteenth Amendment, defendants are entitled to summary judgment on plaintiff's procedural due process claim.

### 2. Substantive Due Process

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." Dellutri v. Vill. of Elmsford, 895 F. Supp. 2d 555, 573 (S.D.N.Y. 2012) (quoting Cunney v. Bd. of Trustees of the Vill. of Grand View, New York, 660 F.3d 612, 626 (2d Cir. 2011). To survive summary judgment, "official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offense to human dignity." Id. (quoting Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007)).

Peluso has not offered any evidence that could "rise to the level of being so outrageous to violate [his] substantive due process right." Id. at 574. The District's decision was amply supported by evidence and no reasonable juror could conclude that it was arbitrary, conscience-shocking, or oppressive. (Defs.' 56.1 Stmt. ¶¶ 38–39, 35, 44.) The Court concurs with the finding of the Suffolk County Personnel Officer, who concluded that "the action of the Board was not

7

unreasonable . . . [and] the penalty of termination is neither shocking to one's sense of fairness nor is it arbitrary." (Id. ¶ 45) (alteration in original).

Peluso's arguments in rebuttal are unpersuasive. First, Peluso mistakenly relies on Matter of Young v. Village of Gouverneur, 44. N.Y.S.3d 235 (App. Div. 3d Dep't 2016), an Article 78 proceeding brought in state court that contains no discussion of substantive due process. Peluso stresses that, in Young, the court overturned the penalty of termination imposed on the employee, finding that, under the "totality of the circumstances" the penalty was "so disproportionate to the offense as to shock our sense of fairness." Id. There is, however, no indication that Young was based on substantive due process—rather, its ruling appears to be based on state administrative law. Moreover, the facts of Young are also distinguishable from the instant case. Contrary to plaintiff's argument, the employee in Young, whose termination was overturned, was not dismissed for "wrongfully taking gasoline for personal use and making false statements under oath." (Pl.'s Br. at 15.) The hearing officer in Young did not sustain the charge that the employee wrongfully took gas. Rather, the employee's termination was based solely on the false statements the employee made.

Second, Peluso cites supposed comparators who allegedly received no punishment and asserts that this is relevant under Young's "totality of the circumstances" standard. (Pl.'s Br. at 15–17.) This argument is not persuasive. Again, Young was not a substantive due process case. Moreover, Peluso mischaracterizes the evidence of these supposed comparators—the deposition testimony cited by Peluso does not show that they were similarly situated to Peluso.

Accordingly, the Court grants defendants summary judgment on plaintiff's substantive due process.

8

C. **First Amendment Retaliation**

Plaintiff's opposition brief argues, in passing, that the District violated the First Amendment by retaliating against him for the discrimination complaint his wife filed. Plaintiff's complaint and brief, however, fail to clearly articulate and advocate for such a claim. In any event, plaintiff has offered insufficient evidence to survive summary judgment on a retaliation claim.

On the first page of plaintiff's complaint, he asserts that his "constitutional rights to due process of law and freedom of speech" were violated and states that he "was terminated as retaliation for statements his wife made regarding matters of public concern." (Compl. at 1.) However, plaintiff's only cause of action under federal law merely states that he is alleging a violation of his "Fourteenth Amendment Rights Under 42 U.S.C. § 1983," and claims that he was wrongfully terminated based on a "fabricated allegation which was unsupported by anyone with any direct knowledge." (Id. at 8–9.) The allegations in the complaint are simply insufficient to place defendants on notice of a First Amendment retaliation claim.

Plaintiff's opposition brief also fails to squarely raise a First Amendment retaliation claim. Plaintiff's only discussion of a First Amendment retaliation—which consists of two paragraphs—comes under the following heading:

> PLAINTIFF IS ENTITLED TO A DISMISSAL OF DEFENDANTS' SUMMARY JUDGMENT BECAUSE JUDICIAL REVIEW IS MANDATED WHEN CONSTITUTIONAL RIGHTS ARE IMPLICATED OR AGENCY ACTED UNCONSTITUTIONALLY OR IN EXCESS OF ITS JURISDICTION

This section of plaintiff's brief is in response to defendants' assertion that plaintiff's failure to pursue an Article § 78 proceeding forecloses judicial review of his claims. See Pl.'s Br. at 13 ("Based on the Second Circuit's holding [in Adler v. Pataki, l85 F.3d 35 (2d Cir. 1999)], further judicial review is warranted as a matter of law. Thus, Defendants' assertion that this lawsuit is a 'third bite at the apple' should be dismissed."). Notably, in plaintiff's brief, under the heading

9

"PLAINTIFF SUFFICIENTLY DEMONSTRATED TRIABLE ISSUES OF FACTS OF HIS CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983," plaintiff only discusses his two due process claims and says nothing about First Amendment retaliation.

Even assuming that plaintiff did sufficiently raise a First Amendment retaliation claim in his complaint and opposition brief, he has not pointed to sufficient evidence for such a claim to survive summary judgment.

Under the First Amendment, it is unlawful for a public employer to retaliate against an employee because the employee's spouse filed a discrimination complaint. Adler v. Pataki, 185 F.3d 35, 42–45 (2d Cir. 1999). A plaintiff bringing such a claim must show that his spouse's complaint was a motivating factor in the employer's decision to take an adverse action against him. (Id. at 47.) Although temporal proximity between a protected activity and an adverse action "may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation" for a Title VII retaliation claim and for other retaliation claims that employ the McDonnell Douglas burden-shifting framework, temporal proximity is, standing alone, insufficient to ultimately establish that the protected activity was a motivating factor behind the adverse action. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) ("[W]ithout more, . . . temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.")

The facts underlying plaintiff's retaliation claim are set out below.

"In or about the Spring of 2014, District Manager Rudy Sunderman conducted an audit of the maintenance shop." ("Defs.' 56. Stmt. ¶ 8.) Sunderman charged plaintiff with misconduct on June 27, 2014. (Id. ¶ 12.)

In May 2013, Peluso's wife was terminated by the Centereach Fire Department. (Pl.'s Br. at 10; Compl. ¶ 21.)  After her dismissal, Mrs. Peluso filed an EEOC complaint against the department. (Compl. ¶ 21.)  Plaintiff does not identify, in his brief or his verified complaint, when this EEOC complaint was filed.  Mrs. Peluso eventually received a settlement. (Id. ¶ 20; Pl.'s Br. at 6, 10.)  Again, plaintiff's brief and verified complaint do not identify when this settlement occurred.  Plaintiff's brief and his verified complaint do not provide any further details about what occurred between the filing of Mrs. Peluso's complaint and June 27, 2014 when charges were brought against plaintiff.

It is undisputed that after the charges were brought a neutral hearing officer determined that plaintiff committed misconduct and recommended termination and that, after the District adopted this recommendation, another neutral third-party, the Suffolk County Personnel Officer, affirmed the termination decision.  At his deposition, plaintiff admitted that he had no reason to believe that the hearing officer harbored any bias. (Defs.' 56.1 Stmt. ¶ 32.)  Similarly, there is no evidence that the Suffolk County Personnel Officer harbored any bias against plaintiff.

Although plaintiff argues in his brief that he was terminated in retaliation for his wife's discrimination complaint, defendants point out that, at his deposition, plaintiff asserted that his termination was the result of a personal dispute with one of the defendants over a derogatory comment that plaintiff's wife made about defendant Julia Wilson a few months before plaintiff was brought up on charges.[2]  (Peluso Dep. 183–84.)  Wilson learned about this derogatory comment shortly after it was made and was upset about it. (Id. at 187.)  At his deposition, plaintiff testified that he "absolutely" believes that Wilson's dissatisfaction with this comment was the

---

[2] Specifically, plaintiff's wife called Wilson a "cunt" outside of her presence. (Peluso Dep. 183–84.)

11

reason for his termination.³ (Id. at 188.) Plaintiff's wife also "believes that [Wilson] 'steered' Plaintiff's termination because" of this derogatory comment. (Defs.' 56.1 Stmt. ¶ 70.)

In light of all of the above, plaintiff has not offered sufficient evidence from which a reasonable jury could infer that his wife's complaint and settlement were a motivating factor in the District's decision to terminate him. The bare fact that Mrs. Peluso filed and settled a discrimination complaint at some point in the year before charges were brought against plaintiff does little to suggest that these protected activities were a motivating factor in plaintiff's termination. Moreover, the probative force of the temporal proximity evidence here is weakened by the fact that plaintiff was only terminated after the hearing officer found that he committed misconduct and recommended termination.⁴ See Testagrose v. New York City Hous. Auth., 369 F. App'x 231, 232 (2d Cir. 2010) (affirming dismissal of discrimination claim and stressing that "the decision to terminate [plaintiff] was based on the recommendation of a Trial Officer, a neutral

---

³ Defendants rely on this testimony in their 56.1 statement. Plaintiff's 56.1 statement disputes this assertion, in part, stating that he denies that this derogatory comment concerning Wilson was "the absolute motivation behind his termination." (Pl.'s 56.1 Stmt. ¶ 69.) In support, plaintiff cites to a portion of his affidavit submitted in opposition to summary judgment in which he states, in conclusory fashion, that the defendants "violated New York [Civil Service] Law by terminating Deponent because my spouse . . . participated in protected activity" by reporting discrimination. (Peluso Aff. ¶ 5.) "[A]s a general matter, . . . plaintiffs may not create material issues of fact by submitting affidavits that dispute their own prior testimony." In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 758 F.3d 202, 213 (2d Cir. 2014). In any event, even accepting plaintiff's affidavit and construing it to indicate that he subjectively believes that his termination was motivated, at least in part, by his wife's protected activities, the other undisputed facts concerning his wife's derogatory comment still undermine plaintiff's retaliation claim.

⁴ In deposition testimony that is not cited anywhere in plaintiff's opposition brief, plaintiff's wife testified that her EEOC complaint was "finally fully settled" one week before plaintiff was suspended without pay and charges were brought against him. (T. Peluso Dep. 13, ECF No. 24-8.)

  Even if the Court were to consider this testimony, the close temporal proximity between the finalization of Mrs. Peluso's settlement and the charges brought against plaintiff is still insufficient, on this record, to suggest that plaintiff's termination was motivated by Mrs. Peluso's protected activities. First, Sunderman's audit happened sometime in the Spring of 2014, prior to the finalization of Mrs. Peluso's settlement. Plaintiff has not offered any evidence to indicate what was occurring concerning Mrs. Peluso's discrimination complaint when the audit occurred. Second, plaintiff has not offered any evidence (or argument) suggesting that the initiation and timing of the audit was, in any way, suspect. Third, the fact that a neutral third-party hearing officer found that plaintiff committed misconduct and recommended that he be terminated undermines any potential inference of retaliation created by the timing of Mrs. Peluso's settlement and the charges brought against plaintiff. Thus, even if this deposition testimony from Mrs. Peluso were considered, a reasonable jury could still not conclude that Mrs. Peluso's protected activities were a motivating factor in plaintiff's termination.

12

decision maker whom [plaintiff] does not accuse of discrimination"); cf. Collins v. New York City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002) ("Appellant's termination occurred . . . only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination.  This fact is highly probative of the absence of discriminatory intent in that termination.").

Plaintiff's opposition brief, which devotes only two paragraphs to his retaliation claim, suggests only two potential counter-arguments.  First, plaintiff suggests that the facts of this case are similar to those in Adler, 185 F.3d 35.  (See Pl.'s Br. at 14 ("Like [Adler], Mr. Peluso alleges that he was wrongfully discharged in retaliation for a lawsuit his wife had filed against state officials.").  Adler, however, is factually distinguishable.  The plaintiff in Adler relied on evidence beyond temporal proximity, including the fact that "[o]ne of his supervisors, in the weeks before his discharge, reportedly mentioned his wife's litigation and the embarrassment it was causing state officials."  Id. at 45.

Second, plaintiff appears to assert in a one-sentence argument that he can prevail under a "mixed motives" theory.  (See Pl.'s Br. at 14 (arguing that the "decision to terminate him had mixed-motives, i.e., pretext hiding behind a purported legitimate basis").[5]  Plaintiff's claim, however, also fails under a mixed motive analysis—given the circumstances here, temporal proximity alone is not necessarily sufficient to survive summary judgment.  See Davis v. St. Tammany Par., No. 10-CV-364, 2010 WL 4723378, at *3 (E.D. La. Nov. 15, 2010) (holding that plaintiff's evidence of close temporal proximity was insufficient for retaliation claim to survive summary judgment under "'mixed-motives' test"); cf. El Sayed, 627 F.3d at 933 (concluding that

---

[5] Plaintiff's argument that the "decision to terminate him had mixed-motives, i.e., pretext hiding behind a purported legitimate basis" appears to conflate pretext and mixed-motive analysis. In any event, plaintiff's retaliation claim fails under either theory.

13

three weeks between the protected activity and plaintiff's termination was, standing alone, insufficient to preclude summary judgment on the plaintiff's Title VII retaliation claim and stating that the plaintiff was only required to prove that "the employer's decision was motivated, at least in part, by an intent to retaliate against him").

In conclusion, defendants are entitled to summary judgment on plaintiff's First Amendment retaliation claim.

**D. Supplemental Jurisdiction**

Having dismissed all of Peluso's claims under federal law, the Court declines to exercise supplemental jurisdiction over the state law claims and dismisses them without prejudice. 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Indeed, the Second Circuit has advised that, absent exceptional circumstances, district courts "should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment." Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986); see also Phillips v. 180 Brooklyn Livingston, LLC, No. 17-CV-0325, 2017 WL 2178430, at *2 (E.D.N.Y. May 17, 2017) ("Thus, federal courts routinely decline to exercise supplemental jurisdiction where state law claims 'are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than federal law claims.'" (quoting OccuNomix Int'l LLC v. N. Ocean Ventures, No. 03-CV-6047, 2003 WL 22240660, at *1 (S.D.N.Y. Sept. 30, 2003))).

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motion for summary judgment on plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and dismisses those claims without prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: September 30, 2017
Central Islip, New York

                                                 /s/ (JMA)
                                           JOAN M. AZRACK
                                           UNITED STATES DISTRICT JUDGE